KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
CODY GRAY - # 310525
cgray@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant VICTOR MAKRAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    v.<br><br>VICTOR MAKRAS,<br><br>                  Defendant. | Case No. 3:21-cr-00402 RS<br><br>**DEFENDANT VICTOR MAKRAS' OBJECTION TO EXCLUSION OF UNVACCINATED JURORS**<br><br>Dept.:    Courtroom 3 – 17th Floor<br>Judge:   Hon. Richard Seeborg<br><br>Date Filed: October 19, 2021<br><br>Trial Date: August 15, 2022 |

At the June 28, 2022 status conference, the Court indicated that, although it has not "made a decision yet," it is inclined to "mandate that all jurors be vaccinated." *See* Hr'g Tr. (June 28, 2022), 24–25; *see also id.* at 25:4–6 ("[I]t is vastly preferable for us to have a vaccinated jury.").

Mr. Makras objects to the wholesale, systematic exclusion of unvaccinated residents from jury service. A vaccine mandate would violate the "fair cross section" requirements of the Sixth Amendment and the Jury Selection and Service Act by disproportionately excluding residents of specific, identifiable race groups and ages. Across California, White and Asian residents are often 25 to 30% more likely to be vaccinated than other groups are; the numbers in the Bay Area are similar. There is also no longer a need for vaccine mandates: what evidence there is about the new Omicron subvariants, BA.4 and BA.5, suggests that the virus now spreads just as easily among the vaccinated. Mr. Makras is, of course, cognizant of the health risks that come with any trial in 2022, and is ready and willing to work with the Court to minimize them.[1] But he asks that this Court proceed according to the standard "safety protocols" in place in this District[2]—by establishing mask mandates and physical-distancing requirements—without unfairly skewing the jury pool.

I.   **BACKGROUND**

There is no doubt that the COVID-19 pandemic has altered our lives. But over the past year, as the virus has evolved and Americans have learned to live with it, most pandemic-related restrictions have fallen away. San Francisco and the State of California have dropped indoor "mask mandates."[3] Commuters and air passengers—who never needed to prove that they were vaccinated to travel domestically—are no longer required to wear masks on public

---

[1] Mr. Makras and his counsel have no objection, for instance, to the Court's proposed masking requirements. *See* Hr'g Tr. (June 28, 2022), 26:10–25.

[2] *Update on Court Proceedings, Operations, and Safety Protocols (May 6, 2022)*, available at https://cand.uscourts.gov/notices/safety-protocols-for-northern-district-of-california-courthouses-updated-july-28-2021/ (requiring visitors to any courthouse to complete a pre-screening questionnaire and leaving each judge to determine "[m]ask and physical distancing requirements" for their courtrooms).

[3] Indeed, earlier this year, the City of San Francisco eliminated mask mandates even for official city meetings: masks are "no longer required in public commission and board hearing rooms in San Francisco city facilities." *See* NBC Bay Area, *SF to Drop Mask Mandate for In-Person Public Meetings Starting [April 25, 2022]*, available at https://www.nbcbayarea.com/news/local/sf-to-drop-mask-mandate-for-in-person-public-meetings-starting-monday/2872142/.

transportation.[4] And restaurants, bars, and other gathering places in the Bay Area no longer require proof of vaccination before entry.

These changes are not just the result of fatigue. Increasingly, it appears that vaccinations no longer protect us from infection or transmission of COVID-19. In particular, the two new dominant subvariants of the virus, BA.4 and BA.5, have "exhibit[ed] the qualities of escape artists, able to elude some of the antibodies produced after coronavirus vaccinations."[5] What sets these new subvariants apart is that they "carr[y] an abundance of mutations"—about 50 in all, most of which are "on the spike protein, which is the viral protein that vaccines train the immune system to recognize and attack."[6] They are, unfortunately, much less susceptible to vaccines.

What's more, although only two-thirds of Americans have been vaccinated, almost everyone else has *already* contracted COVID-19. As a result, the "seroprevalence" rate in the United States—the percentage of those 16 or older who "have developed antibodies against SARS-CoV-2" from vaccination or infection—is now up to 95%.[7] To the extent that antibodies help prevent new infections, and there is no longer much evidence that they do, the vast majority of Americans already have them, whether or not they have been vaccinated.

## II.     ARGUMENT

The Sixth Amendment guarantees all defendants the right to a jury venire drawn from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975); *see also Alston v. Manson*, 791 F.2d 255, 256 (2d Cir. 1986) ("representative jury array remains the expression of the community's role in securing" an impartial trial). Challenges to a jury pool's

---

[4] Reuters, *U.S. airlines drop mask requirements for passengers, employees* (Apr. 19, 2022), available at https://www.reuters.com/business/aerospace-defense/us-airlines-drop-mask-requirements-passengers-employees-2022-04-19/.

[5] *See* A. Hassan, *The Omicron subvariants BA.4 and BA.5 have together become dominant in the U.S., the C.D.C. estimates*, N.Y. TIMES (June 28, 2022), available at https://www.nytimes.com/2022/06/28/health/covid-subvariants-ba4-ba5.html. Last month, the New York Times reported that these two variants accounted for more than 50% of all new cases in the United States—a proportion that is only expected to climb.

[6] K. Katella, *Omicron and BA.5: A Guide to What We Know*, YALE MEDICINE (July 6, 2022), available at https://www.yalemedicine.org/news/5-things-to-know-omicron.

[7] Centers for Disease Control and Prevention, *Nationwide COVID-19 Infection- and Vaccination-Induced Antibody Seroprevalence*, available at https://covid.cdc.gov/covid-data-tracker/#nationwide-blood-donor-seroprevalence.

representativity are generally governed by the Jury Selection and Service Act, 28 U.S.C. §§ 1861–78 ("JSSA"), which makes clear that "all litigants in Federal courts" are entitled to grand and petit juries "selected at random from a fair cross section of the community." The test "is the same whether challenged under the Sixth Amendment of the Constitution or under the [JSSA]." *United States v. Sanchez-Lopez*, 879 F.2d 541, 546 (9th Cir. 1989) (citing *United States v. Miller*, 771 F.2d 1219, 1227 (9th Cir.1985)).

To raise a cross-section claim, defendants must show "[1] that a 'distinctive' group, that is, a 'cognizable' group, was excluded from the jury selection process; [2] that such group was 'systematically excluded'; and [3] that because of such exclusion the jury pool failed to be 'reasonably representative' of the community." *United States v. Savides*, 787 F.2d 751, 754 (1st Cir. 1986) (internal citations omitted); *see also Duren v. Missouri*, 439 U.S. 357 (1979) (establishing a similar, three-prong test for Sixth Amendment challenges).

Here, the wholesale exclusion of all unvaccinated citizens from the jury pool would violate the "fair cross section" requirement.

First, the Court has indicated that it intends to exclude a specific and identifiable group of citizens from the jury-selection process: those who have not yet been vaccinated. Although courts have not yet evaluated whether "unvaccinated" citizens are a cognizable group in this context, doing so is unnecessary, because there is no doubt that vaccination rates vary significantly among race groups and genders. For example, in counties of the Northern District of California, vaccination rates are significantly lower in the Black and Latinx populations than they are in other racial groups:

- In Alameda County, approximately 90% of Asian residents and 91% of Native American residents are fully vaccinated—compared to just 70% of Black residents and 71% of Latinx residents.[8]
- In San Mateo County, more than 95% of Native American residents and 86% of

---

[8] Alameda County Public Health Department, *COVID-19 Data*, available at https://covid-19.acgov.org/data.page?#vaccination.

White residents are fully vaccinated—compared to just 81% of Black residents.[9]

- In Marin County, the disparities are even more pronounced.  Although 90% of Asian residents are fully vaccinated, only 64% of Black residents are.[10]

- In San Francisco County, disparities exist albeit with slightly different results: approximately 90% of Hispanic residents are fully vaccinated—compared to just 74% of white residents and 77% of Black residents.[11]

The picture is similar across California: when it comes to vaccination rates, there are material disparities between Latinx (56%), Black (60%), White (71%), and Asian-American (78%) residents.[12]  That means that, by automatically excluding the unvaccinated from the jury pool, this Court will disproportionately exclude Black and Latinx residents—all of whom are members of "distinctive groups" for *Duren* purposes.  *See, e.g.*, *U.S. v. Sanchez-Lopez*, 879 F.2d 541, 547 (9th Cir. 1989) ("The first prong of the *Duren* test has been met.  Hispanics are members of a distinctive and identifiable group in the community."); *United States v. Hafen*, 726 F.2d 21, 23 (1st Cir. 1984) ("[T]he Supreme Court has held that [Black citizens] are a "distinctive group" for the purposes of jury composition challenges."); *United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995) ("There is little question that both Blacks and Hispanics are 'distinctive' groups in the community for purposes of this test.").

The second element of the fair-cross-section analysis "requires the Court to determine whether" individuals in these "'distinctive' groups are 'significant[ly] underrepresent[ed]' in the jury selection process."  *Jackman*, 46 F.3d at 1246.  Here, they would be.  The vaccination rates in California put a *15-point* spread between White and Latinx residents and an *18-point* spread between Black and Asian residents.  In some counties, like Marin and Alameda, those gaps are

---

[9] San Mateo County Health, *Vaccination Demographic Data*, available at https://www.smchealth.org/post/vaccination-demographic-data.

[10] Marin Health & Human Services, *Marin County COVID-19 Vaccination,* available at https://coronavirus.marinhhs.org/vaccine/data#vaccinedemographics.

[11] *See* City and County of San Francisco, *COVID-19 vaccinations by race and age*, available at https://sf.gov/data/covid-19-vaccinations-race-and-age.

[12] California-wide vaccination data is available at https://covid19.ca.gov/vaccination-progress-data/.

even more pronounced.  By automatically excluding the unvaccinated from the jury pool, the Court will disproportionately eliminate Black residents (who are already a minority in Bay Area counties), as well as Latinx and younger residents.  *Id.* at 1248 ("The fact that appellant's venire included some residents of Hartford and New Britain (6 out of 74 or only 8.1%, compared to the 16.6% in the relevant population) does not defeat appellant's challenge, since the existence of systematic underrepresentation turns on the process of selecting venires, not the outcome of that process in a particular case.").

### III.     CONCLUSION

Like any defendant, Mr. Makras is entitled to an impartial jury drawn from a fair cross-section of the community.  *Taylor v. Louisiana*, 419 U.S. 522, 526 (1975); *see also* 28 U.S.C. § 1861.  "This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible.  But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups." *Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946).  Excluding unvaccinated citizens from the jury pool—especially today, when vaccines no longer appear to prevent transmission of the virus—would violate those principles.  For that reason, Mr. Makras objects.

Dated: July 20, 2022                                                            KEKER, VAN NEST & PETERS LLP

                                                                                    By:   /s/ *John W. Keker*
                                                                                          JOHN W. KEKER
                                                                                          JAN NIELSEN LITTLE
                                                                                          CODY GRAY

                                                                                          Attorneys for Defendant
                                                                                          VICTOR MAKRAS